UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN AND CATHERINE CARROLL, | ) | |
| | ) | |
| Plaintiff-Appellants, | ) | No. 13 C 05995 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| MICHAEL BERLAND, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

**MEMORANDUM OPINION AND ORDER**

Debtors John and Catherine Carroll appeal from the bankruptcy court's order sustaining the Chapter 7 Trustee's objection to the debtors' attempt to exempt trust proceeds from their bankruptcy estate.[1] R. 1, Notice of Appeal. For the reasons discussed below, the bankruptcy court's order sustaining the Trustee's objection is affirmed.

**I. Background**

John and Catherine Carroll filed a Chapter 7 bankruptcy petition in February 2013. R. 1-2, Chapter 7 Voluntary Petition [Dkt. 1]. In Schedule C to their Chapter 7 petition, the Carrolls claimed that a $30,000 future interest from "Wife's Father's Estate" was exempt from their bankruptcy estate. *Id.* The Carrolls justified this exemption based on 735 ILCS 5/2-1403, which provides that creditors may not access a debtor's assets held in what is known as a spendthrift trust. *Id.* The

---

[1]The Court has subject matter jurisdiction over this bankruptcy appeal under 28 U.S.C. § 158(a)(1). Citations to this Court's docket, including the Record on Appeal, are noted as "R. [docket entry number]," followed by a description of the document in that entry. When appropriate, the Court will also include the bankruptcy court's docket entry number ("Dkt. [number]") from *In re Carroll*, No. 13-B-06838 (Bankr. N.D. Ill.).

property that the Carrolls claimed should be exempt from the bankruptcy estate was real estate held in a trust formed by Catherine's parents (the Miskowicz Family Revocable Trust). R. 1-2, Debtor's Resp. to Objection [Dkt. 21]. Catherine had a one-third interest in the net proceeds from the sale of the real estate. *See* R. 1-2, Trustee's Objection [Dkt. 15] at 3; R. 1-2, Exh. B to Debtor's Resp. to Objection, First Am. to Miskowicz Trust [Dkt. 21-9] at 1-2. As of the date of the Chapter 7 petition, the real estate held by the trust was on the market, but had not been sold. *See* Debtor's Resp. to Objection [Dkt. 21] at 1. Michael Berland, the Trustee of the Carrolls' bankruptcy estate, objected to this exemption. *See* Trustee's Objection [Dkt. 15]. Berland argued that Catherine had an unconditional right to receive the property held for her in the Miskowicz Family Revocable Trust after the death of her father in 2012. *Id.* at 4. Because she had an immediate, unconditional right to the principal of the trust, Berland argued that it was no longer subject to the spendthrift provision of the Trust. *Id.* at 6. After reviewing Berland's objection to the Carrolls' claimed exemption in the proceeds of the Miskowicz Trust, the bankruptcy court sustained the Trustee's objection and struck the exemption. R. 1-2, Order Sustaining Trustee's Objection [Dkt. 23]; R. 1-4, Hearing Tr. [Dkt. 39] at 2:7-11.

The background of the Trust begins in 1993, when it was initially settled by Henry and Mary Anna Miskowicz, Catherine's parents, to provide them with income during their lives. *See* R. 1-2, Exh. A to Debtor's Resp. to Objection, Miskowicz Trust [Dkt. 21-1] ¶¶ 1-18. At the death of Mary Anna Miskowicz in 1997,

the trust document directed that the trust property be divided among three subtrusts. *Id.* ¶¶ 19-24. Henry's interest in the community trust estate and his separate trust estate were allocated to the Surviving Spouse's Trust. *Id.* ¶ 21. After the deceased spouse's debts and final expenses were paid from her share of the trust estate, her interest in the community trust estate and her separate trust estate were allocated between the Family Bypass Trust and the Marital QTIP Trust. *Id.* ¶¶ 20, 22. The surviving spouse was the sole beneficiary of the Surviving Spouse's Trust and the Marital QTIP Trust. *Id.* ¶¶ 26, 33. Henry was also the income beneficiary of the Family Bypass Trust, and he was to receive income from that trust periodically as "necessary for the income beneficiary's health, education, or support to maintain the income beneficiary's accustomed manner of living." *Id.* ¶¶ 41-42. The surviving spouse was also the primary principal beneficiary of the Family Bypass Trust, and the Miskowicz's children were additional beneficiaries. *Id.* ¶ 41.

At the death of the surviving spouse, the trust document directed that the remaining principal in the Surviving Spouse's Trust and the Marital QTIP Trust were to be distributed according to the distribution provisions of the Family Bypass Trust. Miskowicz Trust [Dkt. 21-1] ¶¶ 30, 37. The remaining trust estate in the Family Bypass Trust was originally to be distributed as described in Schedule B to the trust. *Id.* ¶ 45. Paragraph 45 was amended in 2007; the amendment provided that the remaining trust estate would be divided equally between the Miskowicz's three children, Gerard Joseph Miskowicz, Margaret Ann Poyer, and Catherine

3

Marie Carroll, if the children survived their parent by 60 days. First Am. to Miskowicz Trust [Dkt. 21-9] at 1-2. The Miskowicz Trust's trustee had discretion to delay any distribution of the trust estate or division into separate trusts for six months. Miskowicz Trust [Dkt. 21-1] ¶ 77.

In addition to the provisions controlling the allocation and distribution of the trust estate, the Miskowicz Trust contained a spendthrift clause, which provided that:

> No beneficiary shall anticipate, assign, encumber, or subject to any creditor's claim or to legal process, any interest in principal or income before its actual receipt by the beneficiary. The beneficial and legal interests in this trust, its principal, and its income shall be free from interference or control of any beneficiary's creditor and shall not be subject to claims of any such creditor or liable to attachment, execution, bankruptcy, or other process of law.

Miskowicz Trust [Dkt. 21-1] ¶ 82. The trust document also contained a "Perpetuities Savings Clause" which said that the trust shall terminate 21 years "after the death of the surviving spouse and of the trustors' descendants living at the time of the surviving spouse's death." *Id.* ¶ 83.

## II. Legal Standard

A federal district court has jurisdiction, under 28 U.S.C. § 158(a), to hear appeals from the rulings of a bankruptcy court. On appeal, the district court reviews the bankruptcy court's legal findings *de novo* and its factual findings for clear error. *In re Miss. Valley Livestock, Inc.*, 745 F.3d 299, 302 (7th Cir. 2014). "A debtor's

entitlement to a bankruptcy exemption is a question of law to be reviewed *de novo*." *Fowler v. Shadel*, 400 F.3d 1016, 1017 (7th Cir. 2005).[2]

### III. Analysis

When a debtor files for bankruptcy, "all legal or equitable interests of the debtor in property" generally become part of the bankruptcy estate. 11 U.S.C. § 541(a)(1). Under the bankruptcy code, a debtor's property includes "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative." *In re Barnes*, 276 F.3d 927, 928 (7th Cir. 2002) (quoting *In re Carousel Int'l Corp.*, 89 F.2d 359, 362 (7th Cir. 1996)) (internal quotation marks and alteration omitted). Some categories of property, however, are statutorily exempt from the bankruptcy estate. One of those categories is property held in a valid spendthrift trust. 11 U.S.C. § 541(c)(2); *Matter of Baker*, 114 F.3d 636, 638 (7th Cir. 1997). Whether a debtor's property is part of a valid spendthrift trust is determined by "applicable nonbankruptcy law." 11 U.S.C. § 541(c)(2); *In re Weinhoeft*, 275 F.3d 604, 605 (7th Cir. 2001). In this case, the parties agree that Illinois law applies. *See* R. 7, Appellants' Br. at 8; R. 17, Appellee's Am. Br. at 2, 17.

Under Illinois law, interpreting a trust is much like interpreting a contract; the unambiguous language of the document will be given effect. *Dept. of Mental Health and Dev. Disabilities v. First Nat. Bank of Chicago*, 432 N.E.2d 1086, 1087

---

[2]The Trustee argues that "[i]f the lower court has correctly stated the law, its findings as to whether the facts meet the legal standard should be disturbed only if those findings are clearly erroneous." R. 17, Appellee's Am. Br. at 1-2 (citing *Pinkston v. Madry*, 440 F.3d 879, 888 (7th Cir. 2006)). Because the bankruptcy court's order sustaining the objection would be affirmed even under the more stringent *de-novo* standard, it is not necessary to decide whether and to which portions of the bankruptcy court's order the clear-error standard applies.

5

(Ill. App. Ct. 1982). "When construing a trust, we cannot fix upon each of its provisions in isolation but must instead consider the document as a whole in order to arrive at the true intent of the settlor." *Peck v. Froehlich*, 853 N.E.2d 927, 932 (Ill. App. Ct. 2006). To determine if a trust with a spendthrift or anti-alienation clause is a valid spendthrift trust, courts look to (1) "whether the trust restricts the beneficiary's ability to alienate and the beneficiary's creditor's ability to attach the trust corpus"; (2) "whether the beneficiary settled and retained the right to revoke the trust"; and (3) "whether the beneficiary has exclusive and effective dominion and control over the trust corpus, distribution of the trust corpus and termination of the trust." *Matter of Perkins*, 902 F.2d 1254, 1257 n.2 (7th Cir. 1990). Even if there is a valid spendthrift trust, however, the spendthrift provision is no longer applicable to trust property when a distribution or conveyance of that property is made to the beneficiary. *See In re Marriage of Sharp*, 860 N.E.2d 539, 549 (Ill. App. Ct. 2006) ("[O]nce trust income is paid to the beneficiary, the income is no longer subject to the protection of the spendthrift provisions in the trust, and the spendthrift provisions are not effective to shelter the trust assets from the beneficiary's creditors."); *Matter of Rolfe*, 34 B.R. 159, 161 (N.D. Ill. Bankr. 1983) ("Once transferred by the Trustee to the beneficiary under the terms of the trust, however, [the interest] becomes the legal property of the beneficiary and is transferable by him and leviable by his creditors.").

It is not necessary to consider whether the spendthrift provision in the Miskowicz Trust creates a valid spendthrift trust, because the unambiguous

6

language of the trust document compels the conclusion that the trust property was distributed outright to Catherine Carroll at the death of her father. The spendthrift provision therefore no longer applied to the distributed trust corpus, and the property distributed to her by the trust is reachable by her creditors and properly part of her bankruptcy estate. *See Sharp*, 860 N.E.2d at 549; *Rolfe*, 34 B.R. at 161; *Lunkes v. Gecker*, 427 B.R. 425, 431 (N.D. Ill. 2010) ("A trust cannot be a valid spendthrift trust if the beneficiary is entitled to have the principal conveyed to him immediately." (internal quotation marks and alterations omitted)).

The amendment to paragraph 45 of the trust document directs that, upon the death of the surviving spouse, one-third of the remaining trust estate "shall [be] distribute[d]" to Catherine Carroll. First Am. to Miskowicz Trust [Dkt. 21-9] at 1-2. Unlike other provisions of the trust document that direct the Miskowicz trustee to "allocate" the trust estate to another trust, paragraph 45 provides that the trust estate must be "distribute[d]" to Catherine and her siblings. *See* Miskowicz Trust [Dkt. 21-1] ¶ 21 ("[T]he trustee shall allocate the surviving spouse's interest in the community trust estate and the surviving spouse's separate trust estate to the Surviving Spouse's Trust."); *id* ¶ 22 (directing the trustee to "allocate the following gifts from the remainder of the deceased spouse's interest in the community trust estate" to the Family Bypass Trust and Marital QTIP trust); *see also* First Am. to Miskowicz Trust [Dkt. 21-9] at 1-2. Paragraph 45 identifies no subtrust in which the one-third share must be paid, and the terms "distribute" or "distribution" are used in other sections of the trust document to describe outright payments to

7

beneficiaries or creditors. *See, e.g.,* Miskowicz Trust [Dkt. 21-1] ¶¶ 6, 14, 19-20, 29-30, 32, 36-37, 44. Furthermore, paragraph 45 is entitled "Distribution – *Outright* to Trustor's Descendants, Surviving and Deceased Spouses' Collateral Heirs." First Am. to Miskowicz Trust [Dkt. 21-9] at 1 (emphasis added). Read in the context of the entire trust document, the only reasonable reading of the amendment to paragraph 45 is that the Miskowicz Trust required a one-third share of the trust estate to be paid outright to Catherine Carroll upon Henry Miskowicz's death.[3]

The Carrolls make several arguments that this reading of the trust document is flawed. *See* Appellants' Br.; R. 15, Appellants' Reply Br. None of their arguments can overcome what is dictated by the plain language of the trust document: the trust corpus was distributed to Catherine outright upon her father's death. The Carrolls first argue that the amendment to paragraph 45 does not lead to the conclusion that Catherine received her portion of the trust property outright because the amendment to paragraph 45 directs the trustee to distribute "[o]ne-third (1/3) of all *shares*" to Catherine. First Am. to Miskowicz Trust [Dkt. 21-9] at 1-2 (emphasis added); Appellants' Br. at 10. The Carrolls do not explain exactly what they believe "shares" should mean in this context, only that the use of the word

---

[3]Paragraph 77 of the trust gives the trustee discretion to defer any distribution for six months. Miskowicz Trust [Dkt. 21-1] ¶ 77. If the trustee had exercised this option, it is possible that during that six-month period, the trust property would still be held in trust for Catherine Carroll and the spendthrift provision could apply. Neither party, however, suggests that the trustee exercised his right under paragraph 77. Even if the trustee had withheld the distribution, the Carrolls filed their bankruptcy petition more than sixth months after Henry Miskowicz's death. *See* Appellee's Am. Br. at 2 (stating that Henry Miskowicz died in July 2012); Chapter 7 Voluntary Petition (demonstrating that the Carrolls filed for bankruptcy on February 22, 2013, more than six months after Henry's death). Paragraph 77 of the trust document does not, therefore, change the result in this case.

8

demonstrates that the trust property was not immediately distributable upon Henry Miskowicz's death. Appellants' Br. at 10. Reading the trust document as a whole, *see Peck*, 853 N.E.2d at 932, the term "shares" does not compel this conclusion. To read "shares" as somehow suggesting that the trust property remained in trust ignores the title of the very paragraph in which "shares" appears, which identifies the distribution to the Miskowicz children as "[o]utright." First Am. to Miskowicz Trust [Dkt. 21-9] at 1. Moreover, the term "shares" in paragraph 45 cannot overcome the consistent use of the term "distribute" throughout the trust document as payment to a beneficiary or creditor. *See* Miskowicz Trust [Dkt. 21-1] ¶¶ 6, 14, 19-20, 29-30, 32, 36-37, 44. By contrast, when the trust document directed the trustee to keep certain property in trust, the document used the term "allocate." *See id.* ¶¶ 21-22. Read in context of the entire document and given its plain and ordinary meaning, "shares" simply means portion of the trust property. Each child of Mary Anna and Henry Miskowicz was to receive a one-third portion of the trust estate when the surviving spouse died.

The Carrolls also argue that reading the trust document to require an outright distribution upon the surviving spouse's death improperly converts the *inter vivos* trust established by her parents into a testamentary trust. Appellants' Br. at 7. The Carrolls claim that, unlike a testamentary trust, trust property from an *inter vivos* trust "does not necessarily become the beneficiary's property at the time of the trustor's death." *Id.* Although this principle is true in general, the language of the trust document here unambiguously directs distribution of trust

9

property "[a]t the surviving spouse's death." First Am. of Miskowicz Trust [Dkt. 21-9] at 1-2. Although the Miskowicz Trust may be an *inter vivos* trust, the death of Henry Miskowicz was the event that triggered the outright distribution of the trust property to Catherine Carroll under paragraph 45. The *inter vivos* nature of the trust does not override the explicit language of the trust document.

The Carrolls claim that the language of the "Perpetuities Savings Clause," which provides that all trusts created by the trust document shall terminate 21 years "after the death of the surviving spouse and of the trustors' descendants living at the surviving spouse's death," means that the trust did not terminate at Henry Miskowicz's death.[4] Appellants' Br. at 17. This "Savings" clause, however, is "standard practice among estate planners" that "operates to save a trust in the event that any of the prior termination provisions of a will or trust run afoul of the perpetuities rule." *Bank of America, N.A. v. Carpenter*, 929 N.E.2d 570, 579 (Ill. App. Ct. 2010); *see also First Nat. Bank of Joliet v. Hampson*, 410 N.E.2d 1109, 1114 (Ill. App. Ct. 1980); *In re Hawley*, No. 02-83674, 2004 WL 330098, at *5 (C.D. Ill. Bankr. Feb. 20, 2004). This Perpetuities Savings Clause does not change when the trust terminates and when the property is distributed. To read this clause any other way would contradict the express language of other, more specific provisions, as discussed above.

---

[4]Berland argues that the Appellants waived this argument because they failed to raise it before the bankruptcy court. *See* Appellee's Am. Br. at 20. Because the argument based on the perpetuities clause fails based on the plain language of the trust document, there is no need to consider the waiver argument.

Finally, the Carrolls argue that reading the trust document to require an outright distribution on Henry Miskowicz's death renders the Family Bypass Trust superfluous. Appellants' Reply Br. at 6. The Miskowicz children, however, retained an interest in the Family Bypass Trust for more than a decade before the distribution mandated by the amendment to paragraph 45. The Family Bypass Trust was created at Mary Anna's death in 1997. Miskowicz Trust [Dkt. 21-1] ¶ 22. The amendment to paragraph 45 called for the distribution of the Family Bypass Trust property upon the *surviving spouse's* death. First Am. to Miskowicz Trust at [Dkt. 21-9] 1-2. The Family Bypass Trust therefore contained property held in trust between Mary Anna's death in 1993 and Henry's death in 2012. The Court's reading of the trust document does not, therefore, make the Family Bypass Trust superfluous.

The plain language of the trust document as a whole makes clear that Catherine Carroll received her share of the Miskowicz Trust property outright upon the death of her father. Because Catherine had an unconditional right to distribution of the property, any spendthrift provision was no longer applicable. *See Sharp*, 860 N.E.2d at 549; *Rolfe*, 34 B.R. at 161; *Lunkes*, 427 B.R. at 431. Nor is it relevant that Catherine had not yet received the distribution (the trust property was on the market at the time the petition was filed and had not yet been sold). A debtor's bankruptcy estate includes "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative." *In re Barnes*, 276 F.3d at 928 (internal quotation marks, alteration, and citations omitted). Catherine had an

11

unconditional and immediate right to the trust property when her father died; it does not matter that the distribution itself had not occurred. The property that was formerly held in the Miskowicz Trust was distributed outright to Catherine Carroll prior to the filing of the Carrolls' bankruptcy petition. The property was not subject to a valid spendthrift trust, and therefore is not exempt from the Carrolls' bankruptcy estate under § 541(c)(2).

## IV. Conclusion

For the reasons discussed above, the bankruptcy court's order sustaining the Trustee's objection is affirmed.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: October 28, 2014